**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **PATSY CRAIG,** | ) | |
| | ) | |
| **Intervenor Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 13-CV-147-TCK-PJC** |
| | ) | |
| **UNIT DRILLING COMPANY and** | ) | |
| **UNIT CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court is Defendant Unit Drilling Company's Motion to Dismiss First Amended

Complaint and Brief in Support (Doc. 53), wherein Defendant Unit Drilling Company ("Defendant")

moves to dismiss the claims of Plaintiff Equal Opportunity Employment Commission ("EEOC")

pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

**I.    Background**

On February 4, 2009, Plaintiff-Intervenor Patsy Craig ("Craig") filed a charge of

discrimination with the EEOC alleging sex discrimination by Defendant. (Mot. to Dismiss 3.) In

her charge, Craig claimed she was not hired by Defendant because she is female. (*Id.*, Ex. 1-A

---

[1]    On April 19, 2013, the EEOC filed a First Amended Complaint, abandoning its claims
against Defendant Unit Corporation and asserting claims only against Unit Drilling Company.
(Doc. 52.)

("[T]he corporate office said they could not hire a woman because they did not have bunk housing for women.").)

  A. *EEOC Investigation*

  After Craig filed her charge, the EEOC began to investigate her claim. On April 27, 2011, the EEOC notified Defendant that the EEOC was expanding the scope of its investigation to "a nation-wide class investigation of all facilities owned or operated by Unit Drilling Co." (Resp., Ex. 2.) The EEOC requested Defendant provide certain information and documents to assist with its investigation for the relevant time period of September 1, 2006 to April 1, 2011. (*Id.*)

  B. *EEOC Determination*

  On June 28, 2013, the EEOC issued a letter of determination regarding the merits of Craig's charge ("Letter of Determination"). The Letter of Determination provided, in part, as follows:

> During the course of the investigation, the Commission uncovered evidence that other women had applied to Respondent and also had not been hired because of their sex. I have considered all the evidence obtained during the investigation and find that there is reasonable cause to believe that there is a violation of Title VII in that Charging Party and other aggrieved women were not hired due to their sex, Female.

(Mot. to Dismiss, Ex. 1-B.) The Letter of Determination invited Defendant to engage in conciliation but stated that "[i]f the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available . . . ." (*Id.*)

  C. *Conciliation*

  On August 30, 2013, the EEOC initiated conciliation of this matter by letter to Defendant's counsel ("Conciliation Letter"). The Conciliation Letter proposed remedies on behalf of Craig and four other female job applicants, specifically Sydney Thompson, Samantha Davidovich, Kim

Wilson, and Hali Hollowell, whom the EEOC determined "were subjected to unlawful employment discrimination in hiring." (*Id.*, Ex. 1-C.) The Conciliation Letter outlined certain proposed remedies and sought $2,000,000.00 on behalf of Craig and the other identified aggrieved individuals.  The Conciliation Letter requested that Defendant respond by September 14, 2012 and specified that "[i]f conciliation efforts fail and the Commission files suit based on the charge, the Commission may seek relief for additional aggrieved individuals who are identified or discriminated against after the date of the Letter of Determination." (*Id.*)

Defendant did not respond to the Conciliation Letter by September 14, 2012.  As a result, David Rucker ("Rucker"), the EEOC investigator assigned to Craig's charge, called Defendant's counsel on September 17, 2012.  (Resp. Mot. to Dismiss, Ex. 1.)  Rucker testified that he left Defendant's counsel a voicemail asking him to respond to the Conciliation Letter and extending the deadline to September 19, 2012. (*Id.*)  On September 20, 2012, Rucker faxed and e-mailed a letter to Defendant's counsel summarizing his conciliation attempts and indicating that he was forwarding the file to EEOC's Legal Unit for possible litigation.  (*Id.*, Ex. 1-A.)

Defendant responded to the Conciliation Letter on October 18, 2012 – one month after the EEOC's deadline and twenty days after the EEOC filed suit against Defendant.  In its response, Defendant rejected the EEOC's proposal and stated that "[t]he offer of conciliation was so artificially inflated and unreasonable that [Defendant] could not even develop a good faith response to it."  (Mot. to Dismiss, Ex. 1-D.)

D.    *Litigation*

On September 28, 2012, the EEOC filed suit[2] against Defendant and Unit Corporation on behalf of Craig and "a class of female applicants, including by not limited to Hali Hollowell, Kim Wilson, Sydnea (Thompson) Hanses, and Samantha (Davidovich) Jacobson," alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991.[3]

## II.    Motion to Dismiss

A.    *Standard of Review*

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may take two forms: a facial attack challenging the complaint's allegations or a factual attack challenging the facts upon which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). "[A] facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations of the complaint as true." *Id.* In contrast, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited

---

[2]    This action was filed originally in the United States District Court for the District of Utah, Central Division, and was transferred to this Court on March 13, 2013 (Doc. 33). Defendants Unit Drilling Company and Unit Corporation moved to transfer the action based on *forum non conveniens*; the EEOC opposed the transfer.

[3]    "Class," as used in the EEOC's First Amended Complaint and in this Opinion and Order, does not refer to a class action brought in accordance with Rule 23 of the Federal Rules of Civil Procedure. Instead, it refers to the EEOC's ability to bring an enforcement action in its own capacity and obtain a remedy on behalf of a "class" of individuals who were aggrieved by the unlawful conduct. *See EEOC v. The Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171, 1177 (D. Colo. 2013) ("In an enforcement action, the EEOC brings a claim in its own capacity. If it prevails on its claim, then it can seek a variety of remedies, including a monetary award for those individuals who were 'aggrieved by the unlawful conduct.'").

4

evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* (internal citations omitted); *see also Honeybaked*, 918 F. Supp. 2d at 1174 (drawing material facts from documents and exhibits attached to motion to dismiss and response).

A court is only required to convert a Rule 12(b)(1) motion to dismiss into a Rule 56 motion for summary judgment where resolution of the jurisdictional question is intertwined with the merits of the case.  "The jurisdictional question is intertwined with the merits of the case if the subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt*, 46 F.3d at 1002 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987)).

Defendant attacks subject matter jurisdiction on both a factual and a facial basis by arguing that (1) the EEOC actually failed to satisfy the administrative prerequisites before filing suit,[4] and (2) the EEOC failed to properly plead satisfaction of the administrative prerequisites in the First Amended Complaint.  Defendant also contends the Court lacks subject matter jurisdiction over any claims that: (1) arise out of conduct that occurred more than three hundred days before Craig filed her charge; and (2) arise out of conduct that occurred after Craig filed her charge.[5]

---

[4]  In support of its factual attack, Defendant attached five exhibits outside the pleadings.

[5]  The EEOC contends that Defendant's motion should be converted to a summary judgment motion because Defendant has attached evidence outside the pleadings to its motion. However, the jurisdictional questions presented here – namely, satisfaction of administrative prerequisites and timeliness – are not intertwined with the merits of the case. *See Wheeler*, 825 F.2d at 259 (finding jurisdictional question intertwined with merits of the case where moving party claimed plaintiff was not an employee within the scope of Title VII and determination of whether plaintiff qualified as an employee was both a jurisdictional question and aspect of her substantive claim).  Accordingly, Defendant's Motion will not be converted into a Rule 56 motion and will remain a Rule 12(b)(1) motion.

B.     *Administrative Prerequisites*

1.     Factual Attack

Title VII was amended in 1972 to give the EEOC "broad enforcement powers by authorizing

it to bring civil actions in federal district court against private employers reasonably suspected of

violating Title VII.  The new enforcement power was intended not only to bring about more

effective private enforcement, but to vindicate the public interest." *EEOC v. St. Lous-S.F. Ry. Co.*,

743 F.2d 739, 743-44 (10th Cir. 1984).  Title VII places a strong emphasis on administrative

resolution of disputes:

> If the Commission determines after such investigation that there is reasonable cause
> to believe that the charge is true, the Commission shall endeavor to eliminate any
> such alleged unlawful employment practice by informal methods of conference,
> conciliation, and persuasion.

42 U.S.C. § 2000e-5(b).  The statute "establishes a comprehensive administrative procedure

whereby the parties involved, including the EEOC, have the fullest opportunity to resolve charges

of discrimination without resorting to the courts." *EEOC v. Outback Steak House of Fla., Inc.*, 520

F. Supp. 2d 1250, 1262 (D. Colo. 2007) (citing *EEOC v. Am. Nat'l Bank*, 652 F.2d 1176, 1184-85

(4th Cir. 1981)).  Exhaustion of these administrative remedies is a prerequisite to suit under Title

VII.  *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012).

Before the EEOC can file suit against an employer, the following must occur: (1) charge filed

with the EEOC against the employer; (2) notice of the charge to the employer; (3) investigation by

the EEOC; (4) determination of reasonable cause; and (5) good faith effort at conciliation. *Outback

Steak House*, 520 F. Supp. 2d at 1261.  Within the Tenth Circuit, exhaustion of administrative

requirements is seen as a jurisdictional prerequisite to suit under Title VII, meaning the court does

not have subject matter jurisdiction over a suit unless the prerequisites have been exhausted.  *Id.* at

1262 ("Where the EEOC fails to exhaust administrative remedies prior to bringing a public enforcement suit pursuant to Title VII, a court lacks subject matter jurisdiction over the action."); *see also Manning v. Blue Cross & Blue Shield of Kan. City*, 522 F. App'x 438, 441 (10th Cir. 2013) (unpublished); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996).

a. *Notice*

Defendant challenges whether the EEOC satisfied the second and fifth requirements set forth above. The Court will address each in turn. Defendant contends the EEOC only provided notice of claims by Craig and the other four individuals specifically identified in the Determination Letter and the Conciliation Letter and that the EEOC should not be permitted to bring claims on behalf of any unidentified aggrieved individuals.

Generally, the EEOC can only bring an enforcement action based on unlawful conduct that was "discovered and disclosed during the pre-litigation process." *Honeybaked*, 918 F. Supp. 2d at 1179. "The claims that can be asserted in an enforcement action must have been disclosed to the employer pre-litigation." *Id.* However, the court in *Honeybaked* distinguished between pre-litigation disclosure of the alleged unlawful conduct and pre-litigation disclosure of the specific identities and numbers of aggrieved individuals.

> Disclosure of the alleged unlawful conduct is essential. Only with knowledge of the alleged unlawful conduct can the employer meaningfully engage in pre-litigation conciliation, by determining its exposure and what changes in procedures or policies may be warranted. It may also be useful for the EEOC's description of the unlawful conduct to include limitations in its scope – in terms of geography, number of claimants, perpetrators, time period, or the specific nature of the conduct. The greater the specificity in describing the alleged unlawful conduct, the less important it becomes to specifically identify aggrieved persons.

*Id.* at 1179-80.

7

Here, the EEOC informed Defendant that it was expanding its investigation into a nationwide investigation of potential sex discrimination against females who submitted job applications between September 1, 2006 and April 1, 2011.[6]  EEOC only formally notified Defendant of and attempted to resolve the charges arising from Craig and the other four identified women.  However, the information provided by the EEOC to Defendant was sufficient to allow Defendant to conduct its own investigation and estimate how many female job applicants – and, perhaps, which applicants – could have been subjected to discrimination.  As discussed in *Honeybaked*, the notice was specific as to geography (all facilities), as to conduct (sex discrimination against female job applicants), and as to time (five-year period).  Defendant, therefore, had sufficient notice of the alleged unlawful conduct, and it is not necessary for the EEOC to identify every aggrieved individual prior to litigation in order to satisfy administrative prerequisites.  The EEOC may pursue a remedy for all individuals subjected to discrimination during the relevant time period.

b.    *Conciliation*

Defendant also argues the EEOC only attempted to conciliate on behalf of Craig and the four other identified aggrieved individuals.  (Mot. to Dismiss 10 ("At no point did the EEOC attempt to conciliate with Defendant on behalf of any 'qualified female applicants' beyond the five individuals identified by name in its Conciliation Letter.").)

To satisfy the jurisdictional requirements of § 2000e-5(b), the EEOC need only make a "sufficient albeit limited effort to conciliate." *EEOC v. Prudential Fed. Sav. & Loan Assoc.*, 763

---

[6]  The EEOC included "all facilities owned or operated by Unit Drilling Co." in its investigation.  (Resp., Ex. 2.)  According to the First Amended Complaint, "Defendant operates approximately 127 oil and natural gas drilling rigs in approximately thirteen states in the central and western United States, with over 2,000 employees."  (First Am. Comp. ¶ 7.)

F.2d 1166, 1169 (10th Cir. 1985).  "Adequate conciliation has been described as informing the defendant of the nature and extent of the violations and of the relief sought, giving the defendant an opportunity to respond, and advising the defendant that if the informal methods fail, the case will be reviewed for possible legal action."  *EEOC v. Kan.*, No. 81-4114, 1982 WL 303, at *3 (D. Kan. Apr. 8, 1982).

The EEOC satisfied its obligation by making a sufficient effort to conciliate.  In the Conciliation Letter, the EEOC informed Defendant of the nature and extent of the violations and the relief sought.  Defendant was on notice that the EEOC was conducting a nationwide investigation, and the Conciliation Letter even proposed changes to occur at all of Defendant's facilities, not just those at which Craig and the other identified individuals applied.  Defendant, therefore, had sufficient notice that the EEOC's conciliation efforts were on behalf of a potential nationwide class. *See Outback Steak House*, 520 F. Supp. 2d at 1268-69 (suggesting that the EEOC articulate "the geographic scope of claims against defendant-employers, so as to make sure all parties are on the same page during conciliation.  Clearly, the threat of a national class action is a greater incentive to conciliate . . . .").  The EEOC repeatedly gave Defendant opportunities to engage in conciliation, but Defendant chose to respond after the deadline passed and after the EEOC filed suit.  Accordingly, the EEOC's claims will not be dismissed for failure to conciliate.  *See EEOC v. JBS USA, LLC*, 794 F. Supp. 2d 1188, 1198 (D. Colo. 2011) ("In the Tenth Circuit, if there has been any attempt at conciliation, the action cannot be dismissed for failure to attempt conciliation").

2.      Facial Attack

Defendant additionally argues that the allegations of the First Amended Complaint do not, on their face, allege that the EEOC exhausted all administrative prerequisites before filing suit. In the First Amended Complaint, the EEOC alleges that "[a]ll conditions precedent to the institution of this lawsuit have been fulfilled." (Doc. 52 at ¶ 6.) The EEOC does not refer specifically to the requirements of § 2000e-5(b) in the First Amended Complaint.

"A plaintiff invoking the court's subject matter jurisdiction 'must allege in his pleadings the facts essential to show jurisdiction' and, if challenged, must support those allegations by a preponderance of the evidence." *Pretlow v. Garrison*, 420 F. App'x 798, 802 (10th Cir. 2011) (unpublished); *see also Patillo v. Larned State Hosp.*, 462 F. App'x 780, 784 (10th Cir. 2012) (unpublished) ("[E]xhaustion of administrative remedies is a jurisdictional prerequisite for Title VII claims and as such it is something plaintiff must 'plead and show' to avoid dismissal."). Because the Court has already determined that the EEOC has, indeed, satisfied the jurisdictional prerequisites to suit, the Court need not consider whether the EEOC's pleading is sufficient. *See Moyer Packing Co. v. United States*, 567 F. Supp. 2d 737, 749 n.3 (noting that, where defendant alleges both a facial and a factual attack, the outcome would be the same because a lower standard is applicable to a facial challenge). Defendant challenged the Court's subject matter jurisdiction over this matter with the motion. In response, the EEOC has supported its allegations of jurisdiction with ample evidence of the Court's jurisdiction.

C.      *Three Hundred Day Statute of Limitations*

Defendant also seeks dismissal of any claims arising from conduct that occurred prior to April 10, 2008, three hundred days before Craig filed her charge, based on the three hundred day

statute of limitations in 42 U.S.C. § 2000e-5(e)(1).  In both Oklahoma and Utah, a plaintiff alleging Title VII violations must file a charge with the EEOC within three hundred days of the alleged discriminatory employment practice.  *See* 42 U.S.C. § 2000e-5(e)(1), *Johnson v. City of Murray*, 909 F. Supp. 2d 1265, 1283 (D. Utah 2012) (explaining that Utah is a "deferral state" because a state agency has the authority to investigate employment discrimination); *Thuc Tran v. Sonic Indus. Servs., Inc.*, 767 F. Supp. 2d 1217, 1224 n.1 (W.D. Okla. 2011) (same with regard to Oklahoma).[7] The EEOC concedes that "[n]one of the individuals for whom the EEOC is currently seeking relief applied more than three hundred days before Patsy Craig's charge."  (Resp. 16, n.7.)  Therefore, this basis for dismissal is moot.

D.     *Single Filing Rule*

Defendant also seeks to limit the claims of unidentified aggrieved individuals in a forward-looking direction pursuant to the "single filing rule."  However, the single filing rule relates to an individual's ability to *intervene* in an existing lawsuit without first filing a charge with the EEOC and satisfying the required administrative prerequisites.  *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1110 (10th Cir. 2001) ("Federal courts universally hold that an individual who has not filed an administrative charge can opt-in to a suit filed by any similarly situated plaintiff under certain conditions.").  The single filing rule does not address the scope of the charges that may be brought by the EEOC in an enforcement action.[8]  Instead, the EEOC may pursue "any violations that

---

[7]  In the motion, Defendant cites Oklahoma law in support of its argument for application of the three hundred day statute of limitations.  Because Oklahoma and Utah were both "deferral states" for all relevant periods of this action, the Court need not decide which state's law should be applied.

[8]  Courts within the Tenth Circuit have applied the single filing rule in EEOC enforcement actions only when ruling on motions to intervene by potential plaintiffs.  *See, e.g.,*

[it] ascertains in the course of a reasonable investigation of the charging party's complaint." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980); *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 833 (7th Cir. 2005) ("The charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to its suit.") (refusing to apply single filing rule to limit EEOC's claims in an enforcement action where EEOC notified defendant prior to filing suit that it had reasonable cause to believe the defendant discriminated against a class of female employees).    Moreover, the policy underlying the rule does not support use of the rule to limit the scope of charges in an EEOC enforcement action.

> The policy behind the single filing rule is that it would be wasteful, if not vain, for numerous employees, all with the same grievance to have to process many identical complaints with the EEOC.  As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggyback-ing.

*Thiessen*, 267 F.3d at 1110.  In an enforcement action, the EEOC must satisfy the administrative prerequisites, discussed *supra* Part II.B, before filing suit.  One of these prerequisites requires the EEOC to give the employer notice of the allegations against it.  As discussed *supra* Part II.B, Defendant was on notice of the scope and nature of the allegations against it.[9]  Defendant cannot seriously argue that it lacks notice of potential subsequent claims arising from the EEOC's

---

*EEOC v. Albertson's LLC*, 247 F.R.D. 638, 643 (D. Colo. 2007).  The Tenth Circuit has not utilized the single filing rule to determine the scope of claims that may be brought by the EEOC.

[9] Defendant suggests February 4, 2009 as the cutoff date for the EEOC's claims on behalf of unidentified aggrieved individuals.  Such a suggestion seems wholly inappropriate given that the EEOC informed Defendant in April 2011 that it had expanded the scope of its investigation to include claims arising between September 1, 2006 to April 1, 2011.

investigation into Craig's charge.  The EEOC may pursue any violations that arise from a reasonable investigation into Craig's charge.

III.    **Conclusion**

Defendant Unit Drilling Company's Motion to Dismiss First Amended Complaint and Brief in Support (Doc. 53) is DENIED.  Defendant's Objections to the Magistrate's September 5, 2013 Order (Doc. 68) and Motion to Stay Discovery Pending its Objections to the Magistrate's September 5 Order (Doc. 71) are DENIED as moot.

It is so ORDERED this 1st day of November, 2013.

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**