# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

EQUAL EMPLOYMENT )
OPPORTUNITY COMMISSION, )
                                )
      Plaintiff, )
                                )
PATSY CRAIG, )
                                )
      Intervenor-Plaintiff, )
                                )
v. )      Case No. 13-CV-147-TCK-PJC
                                )
UNIT DRILLING COMPANY, )
                                )
      Defendant. )

## OPINION AND ORDER

This matter is before the Court on the Motion to Compel Additional Examination Pursuant to Rule 30(b)(6) (the "Motion") [Dkt. No. 149], filed by Plaintiff Equal Employment Opportunity Commission ("EEOC"). EEOC complains that Defendant Unit Drilling Company ("Unit") failed to adequately prepare its corporate designee as to three deposition topics: (1) women interviewed by Unit for jobs on drilling rigs between 2008 and 2013; (2) the factual support for Unit's March 17, 2009, letter to the Utah Anti-Discrimination and Labor Division; and (3) the factual bases for Unit's affirmative defenses. For the reasons set forth below –and within the guidelines described herein – the Motion is **GRANTED**.

# I
## APPLICABLE LEGAL PRINCIPLES

### A. Unit's Obligations Under Rule 30(b)(6)

Fed.R.Civ.P. 30(b)(6) permits a party to take the deposition of a private corporation through an authorized corporate representative. The Rule 30(b)(6) notice must describe "with reasonable particularity" the matters on which examination is requested, and the corporation must then designate a person or persons to testify on behalf of the company. The corporation has an affirmative duty to designate a representative for deposition to speak on its behalf and answer "questions that are within the scope of the matters described in the deposition notice and which are 'known or reasonably available' to the company." *ZCT Sys. Group, Inc. v. FlightSafety Int'l*, 2010 WL 1541687, at *2 (N.D. Okla. April 19, 2010) (citations omitted). As one court has observed:

> Although there is not an abundance of case law on the topic of Rule 30(b)(6), and nearly no case law in this circuit, certain principles are consistent in every court opinion to address these issues so far. First, the deponent has the duty of being knowledgeable on the subject matter identified as the area of inquiry. Clearly, a deponent that does not know about the subject matter to be inquired about is useless as a deponent at all. Second, the designating party is under the duty to designate more than one deponent if it would be necessary to do so in order to respond to the relevant areas of inquiry that are specified with reasonable particularity by the plaintiffs. Third, the designating party has a duty to prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party. Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know. Fourth, the

designating party has a duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry.

*Alexander v. F.B.I.*, 186 F.R.D. 137, 141 (D.D.C. 1998) (citations omitted).

"By commissioning the designee as the voice of the corporation, the Rule obligates a corporate party 'to prepare its designee to be able to give binding answers' in its behalf." *ZCT*, at *2 (further quotations omitted). Inadequate preparation of a Rule 30(b)(6) witness "amounts to a refusal or failure to answer a deposition question." *Id.* at *3. A party's failure to prepare its Rule 30(b)(6) witness also deprives the opposing party of a meaningful deposition. *In re Application of Michael Wilson & Partners*, 2009 WL 1193874, at *3 (D. Colo. April 30, 2009). Where, as here, a party fails to produce an adequately prepared Rule 30(b)(6) witness, the party is required to produce an additional designee with adequate knowledge. *ZCT*, at *2.

## B. Attorney-Client Privilege and Work Product

In a case of federal question jurisdiction, as here, the attorney-client privilege is a matter of federal common law. Fed.R.Evid. 501. Because issues related to the work-product doctrine are procedural in nature, they are also controlled by a uniform federal standard set forth in Fed.R.Civ.P. 26(b)(3). *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).

## 1. Attorney-Client Privilege

The attorney-client privilege is a rule of evidence that protects the confidentiality of communications between an attorney and his client when certain conditions are satisfied. Its purpose is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) *quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*U.S. v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (D.Mass. 1950).

The privilege protects *communications* between the attorney and his or her client. It does not, however, protect the *information* contained within the attorney-client communication. Paul R. Rice, *Attorney-Client Privilege in the United States*, § 5.1 [West 2011] (hereafter, "Rice"). The privilege can be waived through disclosure to a third party.

## 2. Work Product

The Court has discussed the parameters of work-product protection in *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 624-32 (N.D.Okla. 2009). The work-product doctrine strikes a balance between the benefits of an adversary system and liberal discovery rules. *Anderson v. Hale*, 202 F.R.D. 548 (N.D.Ill. 2001). Liberal discovery rules provide parties with the fullest possible knowledge of the operative facts of the case before trial to reduce surprise and ensure that cases are decided on the merits. On the other hand, to arrive at the truth, the adversary system pits attorneys against each other and charges them with gathering information, sifting through it, and developing strategy. *Id*. at 553-54 (citations omitted).

Thus, while the work-product doctrine shields the documents and things prepared by an attorney or party representative, it *does not protect the underlying facts* contained in the documents from discovery. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

> Numerous courts since *Hickman v. Taylor* ... have recognized that names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosures.

*In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631, 634 (N.D.Ga. 2002) (*citing Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). The work-product doctrine does not protect facts sought in discovery even if those facts are attained due to the efforts of the attorney.

> The courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, *of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents*, even though the documents themselves may not be subject to discovery.

8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure (3d ed. 1998) (hereinafter "Wright & Miller") § 2023 (emphasis added). *See also Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121–22 (D.N.J. 2002) (Information in pricing spreadsheets gathered at attorney's request was not protected by work-product doctrine.); *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 518 (N.D.Ill. 1990) ("[T]he work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if a deponent's response to a particular factual question is based upon information provided by counsel.").

Consequently, whether the information in the protected documents is known to the party or is known only to the party's counsel, "it does not contravene the work product rule for an attorney to question an opposing party as to the information contained in protected documents." *Koch Materials*, 208 F.R.D. at 122. A party cannot withhold relevant information on the basis of work product. *Id.*; *In re Bank One Sec. Litig.*, 209 F.R.D. 418, 423 (N.D.Ill. 2002) ("Factual information may not be withheld under the work-product doctrine, but must be produced through interrogatories, depositions or other discovery.").

A party cannot refuse to respond to discovery requesting factual information on the grounds that the information is known only to its attorney. A party must disclose facts in its attorney's possession even though the facts have not been transmitted to the party. 8B Wright & Miller § 2177. *See also Hickman*, 329 U.S. at 504 ("A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."); *Naismith v. Professional Golfers Ass'n.*, 85 F.R.D. 552, 565 (N.D.Ga. 1979) ("It is clear that a party served with interrogatories has an obligation to reveal information held by his attorneys."). In the context of a Rule 30(b)(6) deposition, the deponent may be required to testify regarding facts which the witness has learned from counsel or from his/her review of work product. *See, e.g., Barrett*, 129 F.R.D. at 518. "The courts have consistently held that the work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery." *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 89 (W.D.Okla. 1980).

Attorneys often refuse to disclose during discovery those facts that they have acquired through their investigative efforts and assert, as the basis for their refusal, the protections of the work-product doctrine. Where such facts are

concerned, as opposed to the documents containing them or the impressions and conclusions drawn from them, they must be disclosed to the opposing party in response to a proper request for discovery. Otherwise, discovery would be a meaningless tool and we would be back to the era before the advent of the Federal Rules of Civil Procedure when "mutual knowledge of all the relevant facts gathered by both parties" was far from the guiding principle of the federal litigation process. Michael E. Wolfson, *Opinion Work Product - Solving the Dilemma of Compelled Disclosure*, 64 Neb.L.Rev. 248, 256–257 (1985) (footnotes omitted).

Work product protection can also be waived. Disclosure that is inconsistent with the adversarial system has been deemed to waive work-product protection. Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, 1053 [ABA 5th ed.] ("Voluntary disclosure to a government agency to effect a goal by the disclosing party other than assistance in prospective or ongoing litigation . . . generally constitutes waiver.")

## II
## FACTUAL BACKGROUND

Plaintiff-Intervenor Patsy Craig ("Craig") filed a charge of gender discrimination against Unit with the Utah Anti-Discrimination and Labor Division ("UALD") in February 2009. Unit hired the Salt Lake City law firm of Strong & Hanni to investigate and prepare a response. Kristin A. VanOrman ("VanOrman"), an attorney with the firm, spoke with Unit employees and the

company's in-house counsel, Drew Harding.  VanOrman sent a letter (the "VanOrman letter") dated March 17, 2009 to UALD on behalf of Unit explaining why Unit believed the discrimination charge should be dismissed.  [Dkt. No. 134-1].  The letter contained an 11-paragraph[1] Statement of Facts ("SOF"), apparently based on VanOrman's interviews with Unit employees, and a one-and-a-half page legal analysis.

The following is, verbatim, the SOF provided to the UALD in the VanOrman letter:

1.      Unit is an Oklahoma based oil and gas drilling company with an office in Casper, Wyoming where it runs its Rocky Mountain Division, which includes operations in Utah and Wyoming.

2.      Drilling on an oil rig is rigorous and often treacherous work performed in remote and isolated locations.

3[a].   In September 2008, Unit had two employment positions open in its Rocky Mountain Division.  One position was that of a floorhand.  This is a ground level position for which Ms. Craig and her husband applied.  The second position was that of an experienced motorhand, a position which neither Ms. Craig [sic] were qualified to fill.

3[b].   Unit sought to fill the floorhand position which was located outside of Vernal, Utah. The nature of this position required workers to live on site.  A camp was set up for the workers with very rudimentary facilities. The camp contained a bunkhouse approximately 9 feet wide and 30 feet long.  This bunkhouse would house 8 workers for a 7 day period.  There is one bathroom, no separate changing or sleeping facilities, and no privacy whatsoever.

---

[1]      The SOF contains paragraphs numbered 1 through 9; however, there are two paragraphs numbered "3" and two paragraphs numbered "8."  For ease of reference, hereafter the Court will refer to Paragraphs 3(a) and 3(b) and 8(a) and 8(b).

4.      Unit's safety policies require a certain number of crew members to operate the rig.  It is both unsafe and inefficient to operate short-handed. Furthermore, Unit has contractual obligations to maintain a certain number of crew members on the rig during the drilling of a well. It would take approximately four to six weeks to construct a separate bunkhouse and restroom facilities to accommodate Ms. Craig.  Holding the position open for Ms. Craig for that length of time would be unsafe, impractical and a breach of its safety policies and contractual obligations.

5.      The cost of constructing a new bunkhouse and restroom facilities for Ms. Craig would be approximately $35,000.00-$40,000.00.  Drilling rigs operate on tight margins.  Incurring that much additional overhead for one employee would be uneconomical.

6.      Due to the circumstances available at that location for that position, Unit believed it would be in the best interest of Ms. Craig, in order to protect her privacy and safety, to hire her husband to fill the position instead of her.

7.      Contrary to her assertions, Craig was never told that they "would never hire a girl." Instead, it was explained to her that there were no women currently working at that particular drilling rig in Vernal Utah, and that there currently was no ability to house females at the rig.

8[a].   Unit does not have a policy against hiring women, and in fact has hired a number of women in the past.

8[b].   Ms. Craig would have been considered for a position as one opened up in an area where either multigender housing was available or the rig's location allowed the crew members to leave in between shifts.

9.      Mr. Craig did take the position with Unit, but then quit after less than two hitches.  (A hitch is 7 day work period where employees live on site as explained above).

        This lawsuit was filed, and discovery commenced.  In response to an

interrogatory, Unit identified three persons with knowledge of the facts set out

in the VanOrman letter:  Drew Harding, in house counsel; Scott Evans, Unit's

Rocky Mountain Division recruiting supervisor; and, Lee Johansen, rig manager.

Evans and Johansen were deposed and both claimed to have no knowledge of the facts in the VanOrman letter. EEOC then sought to depose VanOrman and Harding. Unit's motion to quash VanOrman's deposition was granted by the U.S. Court for the District of Utah on the grounds that EEOC had failed to satisfy the three factors described in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) and adopted by the Tenth Circuit in *Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995).

At a telephonic hearing on June 18, 2014, this Court, also relying on *Shelton*, quashed the Harding deposition notice on the ground that under the law in this circuit, counsel should not be deposed unless no other means exist to obtain the information. The Court found that other means did exist to obtain the information – a Rule 30(b)(6) deposition of a Unit designee on this topic.

## III
## DISCUSSION

The Court will focus first on Rule 30(b)(6) Deposition Topic No. 4 regarding the VanOrman letter. Since this lawsuit was filed in September 2012, Unit has offered substantively different reasons why Craig was not hired from those espoused in the VanOrman letter. EEOC has sought to discover the facts underlying the letter, but Unit has resisted discovery on grounds of privilege/work product.[2]

---

[2]     Unit has made three witnesses available to discuss the VanOrman letter. Scott Evans and Lee Johansen testified that they either had no recollection of

Topic No. 4 sought information concerning:

Unit Drilling's response to Patsy Craig's Charge of Discrimination, submitted on March 17, 2009, including its submission to the Utah Antidiscrimination and labor Division, the factual basis for the response, the documents on which the response was based, and the identities of those interviewed in preparing for the response.

In response to Topic No. 4 and the other topics that are the subject of this Order, Unit designated only one witness: John Cromling, Unit's Executive Vice-President of Drilling. From his deposition, it is clear that Cromling did little to prepare to testify on Topic No. 4:

> Q. You understand that you've been designated to testify about topic number 4?
> A. Yes.
> Q. What did you do to prepare to give testimony on that topic?
> A. I read that letter; that response.
> Q. What else – what else did you do?
> A. That's all.
> Q. Did you speak with anybody?
> A. Just counsel.
> Q. Did you speak to anyone else at Unit Drilling?
> A. No.

Dkt. No. 158-5, transcript of Cromling dep., p. 44, lines 9-21.

---

being interviewed by VanOrman or could not remember anything that was said. John Cromling, Unit's Rule 30(b)(6) witness on the contents of the letter, spoke only with Johansen and Evans to prepare for his deposition, and, thus, could provide no information about its factual assertions. Thus, the only persons with any knowledge of the assertions in the VanOrman letter are Unit's in-house and outside counsel. Furthermore, to the Court's knowledge, Unit has not produced a Privilege Log listing any privileged or work-product protected document in connection with the VanOrman letter.

Cromling went on to testify based on his "knowledge of the company and its operations" and limited information made available to him apparently by counsel.[3]  For example, Cromling stated several times that he had "been informed" that the author of the VanOrman letter had interviewed two Unit employees, but he had *not* been informed about any  documents VanOrman or Unit employees had reviewed before VanOrman prepared her letter on behalf of Unit to the UALD.  Unit cites this Court's opinion in

Apparently, Cromling made no effort to inquire into this topic due to his counsel's assertion that this topic is protected from discovery by the attorney-client privilege and the work-product doctrine.  Unit contends that the factual bases for the statements contained in the VanOrman letter, who she spoke with to secure the factual information, and what – if any – documents support those assertions, are privileged.  For the reasons discussed below, the Court disagrees.

---

[3]      Unit cites this Court's opinion in *Butterfly-Biles v. State Farm Life Ins. Co.*, 2010 WL 346838 (N.D.Okla. Jan 21, 2010) for the proposition that it is "perfectly acceptable for a Rule 30(b)(6) deponent to testify based on personal knowledge." [Dkt. No. 157, at 6].  Actually, the case states that a Rule 30(b)(6) witness need not have personal knowledge as long as he or she can testify to matters "known or reasonably available to the organization." *Id.* at *2 (*citing, Reed v. Bennett*, 193 F.R.D. 689, 692 (D.Kan. 2000)).  Cromling can testify from personal knowledge – as long as this personal knowledge includes everything known or reasonably knowable by Unit on this topic.  Cromling *cannot* rely solely on his personal knowledge and make no effort to educate himself as to other information known or available to the company.  That is what it appears happened here.

## The Factual Bases for the SOF are Not Privileged

Attorney VanOrman was hired by Unit to conduct a factual investigation concerning Craig's claim of sex discrimination and to prepare a response to the UALD on Unit's behalf. VanOrman has not represented Unit in the litigation involving the EEOC.[4] She is not an attorney in this case.

VanOrman spoke with Unit personnel and prepared the VanOrman letter to be sent to the UALD on behalf of Unit, explaining why the charge of discrimination was factually and legally flawed. Apparently, VanOrman consulted with in-house counsel Drew Harding – and perhaps others – in the preparation of this letter. Unit admits that the VanOrman letter was submitted to UALD on the company's behalf and was reviewed by the company before it was sent. [Dkt. No. 149-1, p. 62, lines 14-19].

In order to address EEOC's efforts to conduct discovery about the VanOrman letter, the Court must first determine if such discovery is appropriate under the Federal Rules of Civil Procedure. Fed.R.Civ.P. 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter
> that is relevant to any party's claim or defense--including the
> existence, description, nature, custody, condition, and location of
> any documents or other tangible things and the identity and
> location of persons who know of any discoverable matter. For good

---

[4]    The EEOC filed this lawsuit in Utah in 2012. Unit's Motion to Transfer Venue [Dkt. No. 7] was granted and the case was transferred to this Court in March 2013 [Dkt. No. 33].

cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed.R.Civ.P. 26(b)(1).

Unit contends that information underlying the VanOrman letter is irrelevant to this case, and privileged as attorney-client communication and attorney work product. Unit contends the letter is mere "argument of counsel" and will be inadmissible at trial. EEOC contends that the information is relevant, at the very least, for impeachment purposes. EEOC also contends the VanOrman letter constitutes a statement by a party or an admission which can be used at trial.

The Court finds that information concerning the factual assertions in the VanOrman letter is relevant. In this lawsuit, Unit is asserting substantively different grounds for its conduct than those set forth in the VanOrman letter. Information about the facts in the letter would be relevant on the issue of pretext and would certainly be useful for impeachment.

The Court also concludes that the factual information underlying the letter is not privileged either by attorney-client privilege or the work-product doctrine. Furthermore, any such privilege was waived when Unit disclosed the VanOrman letter to the UALD as the company's position statement on the Craig discrimination charge. The letter is not mere argument of counsel; instead, it is

the company's official position statement.  Furthermore, whether or not the VanOrman letter is admissible at trial is not the standard for discovery under Rule 26.  Unit confuses these very different standards.

The VanOrman letter makes specific factual assertions that formed Unit's response to Craig's Charge of Discrimination.  The company intended the EEOC to rely on those assertions and dismiss the charge.  EEOC is entitled to know what factual information supports those factual assertions.  For example, in Paragraph No. 5, the letter states that the cost of constructing a new bunkhouse and restroom facilities for Craig was "approximately $35,000 to $40,000" and that this expenditure was uneconomical.  EEOC is entitled to know what facts support the cost estimate and the assertion that the expenditure would be uneconomical, what witnesses told VanOrman that information, and what documents, if any, support the statements.  As discussed above in the section on applicable legal principles, it is well-established that underlying facts communicated to a lawyer are not privileged.  *Upjohn*, 449 U.S. at 396.  The information EEOC seeks is the underlying facts supporting statements that Unit voluntarily disclosed.

Furthermore, by disclosing this factual information learned from Unit personnel, the company waived any privilege on the underlying factual basis for its disclosures.  Unit purposefully disclosed to the UALD factual information it felt was beneficial to its position that it had not discriminated against Craig.

Unit cannot now slam the door on reasonable inquiry into the basis for those assertions. Unit cannot selectively assert privilege over communications that would "give context and meaning to what the client has disclosed." Paul R. Rice, *Attorney-Client Privilege in the United States*, §9:30 at 133-34 [West 2011]. The VanOrman letter's disclosures are inconsistent with confidentiality, and courts need not permit "hide-and-seek manipulation" of confidences. *In re Sealed Case*, 676 F.2d 793, 818 (D.C.Cir. 1982).

The Court concludes that the information is discoverable under Rule 26 as it is relevant and not privileged. Unit must prepare Cromling or another witness to testify as to the bases for the factual assertions contained in the VanOrman letter. This may necessitate the witness discussing the letter with VanOrman, Harding, and others. Factual information within the knowledge or possession of Unit representatives – including attorneys – is discoverable; consequently, instruction to the witness not to answer questions concerning the facts, witnesses, and documents supporting the SOF in the VanOrman letter is improper.

<u>**Deposition Topics Nos. 3 & 8**</u>

It is also clear that Cromling was not well-prepared as to Topic No. 3 (identification of women interviewed for jobs between 2008 and 2013):

Q. What did you do to prepare for this topic?
A. Nothing.

[Dkt. No. 149-1, p. 42, lines 17-18].

Cromling had not made any effort to educate himself on this topic.

Q.     On what do you base your ability to testify for topic 3 in this deposition?
A.     We don't record the sex of the person that interviews for a job. So the way I understand this question, is as it relates to women, and so there were no records for me to review because there's not that distinction on the interview notes of the application or anything.
Q.     But you also didn't talk to any of the hiring managers at Unit Drilling; is that right?
A.     That's true.

[Dkt. No. 149-1, p. 43, lines 8-18].

This is clearly not a good faith effort to prepare for a Rule 30(b)(6) deposition. Subsequent to the deposition, Cromling apparently discussed the topic with Unit Hiring Managers and has submitted an affidavit supplementing his testimony. This may seem to resolve the issue, however, it effectively denies EEOC the opportunity to ask follow-up questions (if any) on this testimony. Because Unit failed to meet its obligation under Rule 30(b)(6), EEOC must be given this opportunity. Unit shall produce Cromling or another Rule 30(b)(6) witness to testify as to this topic and address any questions EEOC may have. The Court believes that any such questioning will be brief.

Finally, EEOC is entitled to have a Rule 30(b)(6) witness fully prepared to testify as to the affirmative defenses asserted in Unit's Answer. Cromling lacked even a basic understanding of the grounds for Unit's affirmative defenses.

Q.     To get a clear answer, could you please provide the factual basis for affirmative defense number three in Unit Drilling's answer?

A.      Okay.  Unit Drilling is not aware of any other facts regarding this case other than what counsel has discovered.
Q.      Other than what counsel has discovered?
A.      Through their investigation about this case, I am not aware of any other facts.
Q.      What facts has counsel discovered with regard to affirmative defense number three?
Mr. Turner: Those are privileged –

[Dkt. No. 149-1, p. 150, line 22 to p. 151, line 9].

Again, Unit cannot have it both ways, asserting affirmative defenses in its pleadings but refusing to reveal the bases for those defenses on the grounds of privilege.  Unit must provide a witness who can describe the facts known or knowable by the company concerning the basis for its affirmative defenses. EEOC is entitled to know, for example, the factual basis for Unit's assertion that the Plaintiffs have failed to mitigate damages.  Such factual information is not privileged or protected work product.  Questions related to Affirmative Defenses 2-5 should be brief, since these matters were briefed and argued to the Court on Unit's Motion to Dismiss [Dkt. No. 53] and decided by the Court on November 1, 2013 [Dkt. No. 76].  Furthermore, Cromling testified that Unit has no factual information related to defenses 2-5 other than what was provided to the Court on the Motion to Dismiss.  [Dkt. No. 158-5, p. 154, line 15 to p. 155, line 16].  As to affirmative defenses 6 and 8, Cromling or another Rule 30(b)(6) witness must be prepared to answer questions concerning the factual bases for these defenses.

## Summary

As outlined above, the Motion to Compel Additional Examination Pursuant to Rule 30(b)(6) is **GRANTED**.

Cromling or another witness must prepare to respond to questions as to topics 3, 4 and 8:

Unit will provide a witness to respond to questions regarding topic No. 3, focusing chiefly on the statements contained in Cromling's belated affidavit.

Unit will provide a witness who is fully prepared to discuss the VanOrmen letter (topic No. 4). This will involve the witness discussing the matter with VanOrman and Harding before the deposition.[5]

Unit will prepare a witness to discuss affirmative defenses 6 and 8.

In general, information regarding the factual basis for the VanOrman letter and the bases for defenses 6 and 8 is not privileged.

Since Unit failed to adequately prepare its Rule 30(b)(6) witness, it shall be required to pay the reasonable expenses of the EEOC in connection with this renewed Rule 30(b)(6) deposition, as well as the cost of this Motion. The deposition shall be concluded by July 31, 2014.

---

[5] Failure to adequately prepare a witness on this topic could result in the Cpourt's re-examination of the issue of depositions of VanOrman and/or Harding.

IT IS SO ORDERED this 17th day of July 2014.

Paul J. Cleary
United States Magistrate Judge