**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| PATSY CRAIG, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | No. 13-CV-147-TCK-PJC |
| | ) | |
| UNIT DRILLING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant Unit Drilling Company's Motion for Partial Summary Judgment (Doc. 154), in which Defendant Unit Drilling Company ("Unit") seeks summary judgment on the claims brought by Plaintiff Equal Employment Opportunity Commission ("EEOC") on behalf of Sydnea Hanses, Hali Yonkey, Samantha Jacobson, and Kim Wilson. Unit does not seek summary judgment on the claims brought by Plaintiff-Intervenor Patsy Craig.[1]

**I.    Factual Background**

The following facts are undisputed or construed in a light most favorable to the EEOC.[2]

---

[1] Unit's Motion to Bifurcate (Doc. 251), the EEOC's Motion for Juror Questionnaire (Doc. 304), and any remaining motions in limine will be addressed at the pre-trial conference.

[2] The EEOC filed a Motion to Strike Paragraphs from Unit Drilling's Affidavits (Doc. 201), in which the EEOC seeks to strike certain paragraphs from the affidavits of certain Unit employees. The EEOC claims the challenged paragraphs either contradict the affiant's prior deposition testimony or provide conclusory testimony that does not comply with Federal Rule of Civil Procedure 56(c)(4). The Court has not considered the challenged paragraphs in ruling upon Unit's Motion for Partial Summary Judgment. Accordingly, the EEOC's Motion to Strike is denied as moot.

## A. The Rigs

Unit operates drilling rigs in various locations in the United States. Six general positions exist on Unit rigs: drilling supervisor, rig manager, driller, derrick hand, motor hand, and floor hand. The floor hand position is an entry-level position which requires no experience. A floor hand's responsibilities include, in part: assisting in all rig operations, preparing the rig floor, maintaining housekeeping on the rig floor and around the rig, handling and measuring tubular goods, and assisting in the operation and maintenance of rig equipment. Unit's job description for a floor hand lists three qualifications: (1) reliable attendance, (2) ability to work under stress, and (3) ability to communicate effectively. (Job Description, Ex. 36 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 1-2.)

A floor hand regularly works a 12.5 hour shift (known as a "tour") for seven consecutive days (known as a "hitch"). During the hitch, the floor hand often lives in housing provided by Unit. To be considered for all other rig positions, an applicant must have prior drilling experience. No prior drilling experience is required for a floor hand, but Unit claims to prefer applicants with experience on a drilling rig.

## B. Unit's Hiring Practices

Unit conducts hiring for rig hand positions primarily out of four hiring offices located in Oklahoma, Wyoming, and Texas. Each division of Unit is assigned to a hiring office based on geographical area. A question of fact exists as to whether hiring for rig hand positions occurs solely in the hiring office or whether some hiring occurs on the rigs themselves.

Unit's hiring office in Casper, Wyoming coordinates hiring for rig hands on rigs located in Unit's Rocky Mountain Division. Scott Evans ("Evans") is Unit's Recruiting Supervisor for the

Rocky Mountain Division. Thomas Whitmire ("Whitmire") is Unit's Assistant Hiring Manager for the Rocky Mountain Division. Unit's hiring office in Oklahoma City, Oklahoma coordinates hiring for rigs hands on rigs located in Unit's Mid-Continent and Woodward Divisions. Theresa Turner ("T. Turner") is Unit's Central Hiring Supervisor for the Mid-Continent and Woodward Divisions. Nicki Cox ("Cox") and Shayla Turner ("S. Turner") are Unit's hiring managers for those same divisions.

Unit's "Application for Employment" states that applications "are considered active for 30 days from the date they are filed. After 30 days, the applications are retired to an inactive file and held in an inactive status for a period of time required by law." (Application for Employment, Ex. 12 to Def.'s Mot. for Partial Summ. J.) A factual dispute exists, however, as to whether Unit employees followed this policy.

Unit does not have a written policy prohibiting hiring females for rig hand positions. Unit offered a rig hand position to a female applicant in 2005 but later rescinded that offer after the candidate failed a physical. The only women Unit employs in non-administrative positions work as parts coordinators, a position created after this litigation commenced.

## C.    The Claimants

### 1.    Patsy Craig[3]

---

[3] Unit does not seek summary judgment on the failure to hire claim related to Patsy Craig. As such, Unit argues the allegations related to Patsy Craig are irrelevant to its Motion for Partial Summary Judgment. Relevance of other discrimination is fact-based and "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Within the Tenth Circuit, "the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990) (collecting cases).

In September 2008, Patsy Craig and her husband, Michael Craig (collectively, the "Craigs"), applied for jobs with Unit at the Rocky Mountain Division hiring office in Wyoming. Patsy Craig had prior experience as a floor hand on a rig. Managers of Unit rigs in Wyoming told Patsy Craig they would not hire her because the men on the rig would look at her instead of working. Another rig manager indicated he could not hire Patsy Craig because Unit did not have housing for her. A Unit hiring manager told Patsy Craig that Unit could not afford to provide housing for her. Unit did not hire Patsy Craig but did hire Michael Craig.

### 2. Samantha Jacobson

Before applying, Samantha Jacobson, also known as Samantha Davidovich ("Jacobson"), called Unit's Rocky Mountain Division hiring office and spoke with a man whose name started with "S." He told Jacobson that if she was interested in employment she should submit an application. Jacobson submitted an application to Unit's Rocky Mountain Division on January 19, 2010. On her application, Jacobson indicated she desired "any/pit hand" position and listed prior experience as a flowtester for an oil and gas company, in "tech support," and as a realtor. (Jacobson Application, Ex. 21 to Def.'s Mot. for Partial Summ. J., 2.) As a flowtester, Jacobson was responsible for opening and closing valves and monitoring meters, among other tasks.

Two days after submitting her application, Jacobson called and spoke with the same man again. He said he had reviewed her application and that Unit preferred candidates with experience

---

The Court finds the allegations related to Patsy Craig relevant. Despite the two-year difference in application date, the facts and circumstances surrounding her application and Unit's decision not to hire her are closely related to those of the other Claimants and relevant to the issue of Unit's discriminatory behavior towards female applicants for rig positions.

on rigs. He made no mention of Jacobson's sex. Although Jacobson had prior experience with an oil and gas company, she had not worked on a drilling rig.

Jacobson's boyfriend, Don Shaffer ("Shaffer"), applied for a position with Unit at the same time as Jacobson. He listed prior experience as a mason and indicated he desired "any" position. Unit did not offer Shaffer a position.

### 3.    Sydnea Hanses

Sydnea Hanses, also known as Syndea Thompson ("Hanses"), applied to Unit's Rocky Mountain Division on February 25, 2010. A male Unit employee encouraged Hanses to apply for an open administrative assistant position in Wyoming. Hanses later visited Unit's website and saw a variety of available positions. Hanses submitted her application via fax to the Casper, Wyoming hiring office. In the blank for "position desired" on her application, Hanses wrote "open" and testified that she was willing to accept any position available. Hanses listed prior employment as a waitress, housekeeper, and substitute preschool teacher on her application. Prior to submitting her application to Unit, Hanses had neither applied to nor worked for a drilling company.

A few minutes after she faxed her application, Hanses called the hiring office to confirm receipt of her fax. The unidentified Unit employee indicated that there were not any positions available for Hanses at that time.

Hanses' boyfriend, Timothy Leonard ("Leonard"), applied for a position with Unit on the same date. Leonard wrote "open" in the space for "position desired," and listed prior experience as a cashier and food stocker. Unit did not offer Hanses or Leonard a position on a rig or otherwise. Hanses' gender was never discussed during her conversations with Unit employees.

5

### 4. Kim Wilson

Kim Wilson ("Wilson") submitted an application to Unit's Oklahoma City hiring office on April 12, 2010 by fax.[4] On her application, Wilson wrote "open" in the space for "position desired." She listed prior experience as a "product specialist" with BJ Services, which required loading/unloading heavy equipment, rebuilding pumps, and mixing chemicals. The day after submitting her application, Wilson called to check on her application. She spoke with a woman, who Wilson believed to be a receptionist, who told her the man responsible for hiring was unavailable and to call back.

Wilson called later and spoke with a man who said he was responsible for hiring. He reviewed her application, said she had experience, and said he would set up a time for her to complete a drug test and physical. Wilson never heard back from him, despite repeated attempts to reach him. On one such attempt, the woman Wilson had spoken with before answered and told Wilson that Unit probably was not going to hire her because it could not accommodate a female working on a rig. Unit did not hire Wilson.

---

[4] On September 23, 2011, Wilson submitted a second application to Unit's Oklahoma City hiring office. In the Opinion and Order dated November 1, 2013, this Court permitted the EEOC to pursue a remedy for all individuals subjected to discrimination during the relevant time period of September 1, 2006 and April 1, 2011. (Doc. 76 at 8 ("The EEOC may pursue a remedy for all individuals subjected to discrimination during the relevant time period." ).) Wilson's second application falls outside the relevant time period. Therefore, the Court has not considered her second application or any of the facts surrounding it.

Unit filed a motion in limine seeking to exclude at trial evidence related to Wilson's second application. Because Wilson could not have been subjected to discrimination during the relevant time period as a result of her *second* application, Defendant's motion in limine (Doc. 240) is granted.

**5.      Hali Yonkey**

Hali Yonkey, also known as Hali Hollowell ("Yonkey"), visited Unit's Rig 115 to see a

friend.   While visiting the rig, Yonkey asked for and received a copy of an application for

employment from an unidentified man Yonkey claims was the "pusher" on the rig.  Yonkey claims

the man told her, "You know I can't hire you, right?  You're too pretty.  We wouldn't get anything

done out here."

Hiring for Rig 115 is coordinated by Unit's Oklahoma City hiring office.  Yonkey submitted

her application the Oklahoma City hiring office on January 18, 2011 by fax.  On her application,

Yonkey indicated she was applying for a floor hand position and listed prior experience as a waitress

and a cashier.  Prior to submitting her application to Unit, Yonkey had never applied for or worked

for a drilling company.  No positions were available on Rig 115 at the time Yonkey applied, but

floor hands were hired on that rig during the 30 days after Yonkey applied.

**D.      The Litigation[5]**

On September 28, 2012, the EEOC filed suit[6] against Unit on behalf of the Claimants and

a class of female applicants pursuant to 42 U.S.C. § 2000e-5(f)(1), alleging violations of Title VII

of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.[7]  Unit subsequently filed

---

[5] The Court's Opinion and Order dated November 1, 2013 (Doc. 73) details the administrative process which preceded this litigation and is incorporated by reference herein.

[6] This action was filed originally in the United States District Court for the District of Utah, Central Division, and was transferred to this Court on March 13, 2013 (Doc. 33).

[7] "Class," as used in the EEOC's First Amended Complaint and this Opinion and Order, does not refer to a class action brought in accordance with Rule 23 of the Federal Rules of Civil Procedure.  Instead, it refers to the EEOC's ability to bring an enforcement action in its own capacity and obtain a remedy on behalf of a "class" of individuals who were aggrieved by the

its Motion for Partial Summary Judgment. On February 21, 2013, Patsy Craig intervened in the lawsuit. The other Claimants elected not to intervene and their actions are being prosecuted by the EEOC.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient  to establish the existence of those elements essential to that party's case. *See Celotex Corp. v.  Catrett*, 477 U.S. 317, 323-33 (1986).

## III.    Failure to Hire Claim

Under Title VII, it is unlawful for an employer "to fail or refuse to hire . . . any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Unit seeks summary judgment on the EEOC's failure to hire claim, arguing that (1) the EEOC cannot establish a prima facie case of discriminatory

---

unlawful conduct. *See E.E.O.C. v. The Original Honeybaked Ham Co. of Ga.*, 918 F. Supp. 2d 1171, 1177 (D. Colo. 2013) ("In an enforcement action, the EEOC brings a claim in its own capacity. If it prevails on its claim, then it can seek a variety of remedies, including a monetary award for those individuals who were 'aggrieved by the unlawful conduct.'").

failure to hire as to Hanses and Yonkey; and (2) the EEOC cannot establish that Unit's proffered legitimate, non-discriminatory reason for failing to hire the Claimants – namely, their lack of qualifications – was pretextual.

A plaintiff can prove sex discrimination using either direct or circumstantial evidence. The standard applicable to a failure to hire claim varies depending upon whether the plaintiff relies on direct or circumstantial evidence to support his claim. *See Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir. 1993) ("Statements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination. Such statements make the *McDonnell Douglas* analysis and shifting of burdens inapplicable.") (internal citation omitted). Where a plaintiff relies on circumstantial evidence, the plaintiff must satisfy the burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* framework first requires a plaintiff to establish a prima facie case of discrimination under Title VII. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision. *Id.* The employee then bears the burden to show that the legitimate, non-discriminatory reason offered by the defendant is merely pretext for illegal discrimination. *Id.*

### A.      Preliminary Evidentiary Issues

As a preliminary matter, the Court must address the type of evidence offered by the EEOC in support of its claims. The EEOC contends certain statements made by Unit employees to the Claimants constitute direct evidence of discrimination.

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Direct evidence requires proof of an existing policy which itself constitutes discrimination or oral or written statements on the party of the defendant showing a discriminatory motivation." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007) (internal citations and quotation marks omitted). If a statement may be interpreted two ways – one discriminatory and one benign – the statement does not constitute direct evidence. *Id.* Generally, in an employment context, the "only 'direct evidence' that a decision was made 'because of' an impermissible factor would be an admission by the decisionmaker such as 'I fired him because he was too old.'" *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1000 n.8 (10th Cir. 2011).

Unit argues the statements offered by the EEOC as direct evidence actually constitute inadmissible hearsay under Federal Rule of Evidence 801(c) and, as such, should not be considered for purposes of summary judgment. *See Wright-Simmons v. City of Okla.City,* 155 F3d 1264, 1268 (10th Cir. 1998) (noting that court may consider only admissible evidence in ruling on a motion for summary judgment); *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548 (10th Cir. 1995) (holding that inadmissible hearsay testimony submitted in depositions may not be considered in ruling on summary judgment). The EEOC contends the statements may be considered for purposes of summary judgment and at trial because they qualify as non-hearsay statements of a party opponent pursuant to Rule 801(d)(2)(D).

Under controlling Tenth Circuit precedent, "an employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was 'involved in the decisionmaking process affecting the employment action' at issue." *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1208-09 (10th Cir. 2010). Statements fall outside this scope

10

when they relate to "decisions to which [the employee was] not a party." *Id.* Unit argues the statements, if made, were made by Unit employees who were not directly involved in the employment decisions at issue in this case.

### 1. Statements to Patsy Craig

Lee Johansen, a rig manager, allegedly told Patsy Craig, in the presence of her husband, that he would not hire her because guys would look at her instead of getting their work done. (Dep. of M. Craig, Ex. 5 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 74:20-22.) Patsy also alleges Tom Whitmire, a hiring manager, told her that he could not provide her with separate housing. (Dep. of P. Craig, Ex. 6 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 254:19-23.)

The Court finds that these statements qualify as non-hearsay statements of a party opponent under Rule 801(d)(2)(D). Each statement was made by a high-level employee who was somehow involved in the decision-making process, even if such individual did not have authority to make the final decision regarding the hiring of Patsy Craig.

### 2. Statement to Yonkey

Yonkey alleges an unidentified rig manager/pusher told her that he could not hire her because she was "too pretty" and that they "wouldn't get anything done out here" when she picked up an application at Rig 115. (Dep. of H. Yonkey, Ex. 20 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 164:24-165:3.) Although the EEOC has not named the speaker, the EEOC has provided sufficient evidence to conclude that the speaker was the rig manager of Rig 115 on the date Yonkey applied, which the Court finds sufficient. The deposition testimony in the record indicates that rig managers participate in the hiring of floor hands by recommending applicants, communicating with

11

candidates, and distributing applications. (Dep. of N. Cox, Ex. 4 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 50:12-18, 51:8:-24; Dep. of T. Turner, Ex. 16 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 49:3-6; Dep. of W. Whitmire, Ex. 18 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 60:22-61:6.) Accordingly, the Court finds that the statements made to Yonkey by the manager/pusher of Rig 115 are non-hearsay statements by a party opponent under Rule 801(d)(2)(D).

### 3. Statement to Wilson

Wilson alleges a receptionist told her that "we can't accommodate with [sic] a girl working on a rig" when she called the Oklahoma City hiring office to follow up on the status of her application. (Dep. of K. Wilson, Ex. 19 to Pl.'s Resp. to Def.'s Mot. for Partial Summ. J., 170:15-22.) Neither the EEOC nor Wilson have been able to identify the receptionist or provide other specifics which would allow for her identification and/or her role in the hiring process. Accordingly, the Court will not consider this statement for purposes of summary judgment.[8]

### 4. Direct Evidence vs. Circumstantial Evidence

Although admissible and certainly relevant, the Court does not deem the statements to Patsy Craig and Yonkey as direct evidence of discrimination because the statements arguably are capable of two interpretations, one benign and one discriminatory. *See Hall*, 476 F.3d at 854. The EEOC does not have direct evidence to support its claim as to each of the Claimants. Therefore, the Court will analyze the EEOC's failure to hire claim with regard to each of the Claimants under the *McDonnell Douglas* framework.

---

[8] If further identifying information is presented at trial, the Court may revisit the admissibility issue with regard to this statement.

### B.    Analysis under *McDonnell Douglas* Framework

#### 1.    Prima Facie Case

Under the *McDonnell Douglas* framework, the EEOC bears the initial burden of establishing a prima facie case of sex discrimination for each of the Claimants.  A prima facie case of discriminatory failure to hire requires a plaintiff to demonstrate that: (1) the plaintiff belongs to a protected class; (2) the plaintiff applied for and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after the plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *Garrison v. Gambro, Inc.,* 428 F.3d 933, 937 (10th Cir. 2005).  Unit claims the undisputed facts demonstrate that the EEOC cannot establish its prima facie case for Hanses and Yonkey.  Unit does not contest the EEOC's prima facie case for the remaining Claimants.

#### a.    Hanses

Unit challenges the EEOC's ability to establish its prima facie case because Unit argues Hanses only applied for an administrative assistant position, not a rig hand position.  During her deposition, Hanses testified that a Unit employee encouraged her to apply for an available administrative assistant position.  However, when Hanses visited the website to print the application, she discovered that a variety of positions were available, including positions on rigs.  (Dep. of S. Hanses, Ex. 15 to Def.'s Mot. for Partial Summ. J., 58-59.)  On her application, Hanses wrote "open" in the space for "position desired," indicating that she would consider any available

13

position.[9] (Hanses' Application, Ex. 14 to Def.'s Mot. for Partial Summ. J., 2.) She also testified

that she "would have taken any position available." (Dep. of S. Hanses, Ex. 15 to Def.'s Mot. for

Partial Summ. J., 56:3-4.) The impetus for Hanses to seek employment with Unit might have been

an available administrative assistant position, but Hanses clearly indicated on her application that

she was "open" to any available position. A reasonable jury could find that Hanses applied for a rig

hand position.[10]

### b. Yonkey

Unit argues the EEOC cannot establish a prima facie case with regard to Yonkey because

she was not qualified for a floor hand position. Unit contends, even if Yonkey had been offered a

floor hand position, a medical condition would have precluded her from performing the required

duties. Specifically, during her deposition, Yonkey admitted she has a heart murmur and that during

high school a physician recommended she avoid "just lifting weights all day, just sitting there, you

know, extensive heavyweight lifting." (Dep. of H. Yonkey, Ex. 18 to Def.'s Mot for Partial Summ.

J., 141:20-22.)

The Court rejects Unit's arguments because a court examines a candidate's qualifications

"only in light of the facts available to the decisionmaker at the time of the decision, not in light of

---

[9] Interestingly, Unit characterizes the positions sought by Hanses and her boyfriend,
Leonard, differently even though both wrote "open" in the space for "position desired."
According to Unit, "open" for Hanses meant she was only interested in an administrative
assistant position, while "open" for Leonard meant he was interested in "a rig hand position."
(Def.'s Mot. for Partial Summ. J. 7.)

[10] Unit filed a motion in limine seeking to exclude testimony that Hanses applied for a
rig hand position. Unit cites Hanses' deposition testimony – often grossly out of context – to
argue that Hanses only applied for an administrative position. As noted above, both Hanses'
application and her testimony demonstrate her willingness to consider any position offered by
Unit. Unit's motion in limine (Doc. 234) is denied.

facts that might have been apparent to other or that might have become apparent only in hindsight." *Johnson*, 594 F.3d at 1211-12. Unit admits it was unaware of Yonkey's heart murmur at the time it decided not to hire her. Therefore, Yonkey's heart murmur has no bearing on the EEOC's ability to demonstrate Yonkey's qualifications as part of its prima facie case.

### 2. Legitimate, Non-Discriminatory Reason

Under *McDonnell Douglas*, the burden now shifts to Unit to articulate a legitimate, non-discriminatory reason for failing to hire the Claimants. Unit contends it chose to hire "more qualified candidates with drilling experience" instead of hiring the Claimants. (Def.'s Mot. for Partial Summ. J. 25.)

### 3. Pretext

Once an employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that there is a genuine dispute about whether the explanation was pretext for discrimination. *Timmerman*, 483 F.3d at 1113. A plaintiff may show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks omitted). "The plaintiff does not have the burden of proving a defendant's proffered reasons were false, or that a discriminatory favor was the 'sole' motivating factor in the employment decision." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008). If pretext is shown, the trier of fact can reasonably infer from the falsity of the explanation that the employer is covering up a discriminatory purpose. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007) ("[O]nce

15

the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.").

The Court concludes that the EEOC has offered sufficient pretext evidence to reach a jury on its failure to hire claim. First, the EEOC has demonstrated inconsistencies in the reasons cited by Unit for its refusal to hire the Claimants.

Unit originally told Patsy Craig and Yonkey that having a woman on a rig would distract the male employees. Later, Unit told Patsy Craig it could not hire her because Unit did not have any housing available for women. Unit now claims it hires only those candidates with the best qualifications and that the Claimants simply were not the best qualified candidates. In light of the conflicting reasons offered by Unit as to why the Claimants were not hired, a jury could reasonably conclude that Unit's legitimate, non-discriminatory reason was simply an after-the-fact justification for Unit's discrimination. *See Johnson*, 594 F.3d at 1211 ("To support an inference of pretext, to suggest that something more nefarious might be at play, a plaintiff must produce evidence that the employer did more than get it wrong. He or she must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda."); *Bailiff v. Securitas Sec. Servs. USA, Inc.*, 497 F. Supp. 2d 1236, 1242 (D. Kan. July 20, 2007) (citing *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813 n.6 (10th Cir. 2000)) ("[A] jury may infer pretext when an employer, at the time of trial, offers a new reason for an adverse employment action that is unsupported by the documentary evidence.").

Second, the EEOC has created a question of fact as to whether the men hired by Unit were more qualified than the Claimants. The EEOC contends Unit hired men as floor hands who had no

16

prior drilling or manual labor experience, in contradiction of Unit's legitimate, non-discriminatory

reason.  Although the parties disagree as to the appropriate pool of comparators, and the EEOC has

created questions of fact as to this issue.  Unit contends the pool should be limited to individuals

who applied at the same location as the individual Claimants and were hired within 30 days of the

Claimants' individual applications.  However, the EEOC has cited testimony from Unit employees

showing that (1) Unit did not have a uniform process to remove applications from consideration after

30 days, and (2) Unit hiring officials often disregarded the "location where applying" field on the

application and considered the applicant for positions at other locations.  (*See* Pl.'s Resp. to Def.'s

Mot. for Partial Summ. J. 41.)   Because the identities – and, thus, the qualifications – of the

comparators remain uncertain, issues of fact remain which could permit a jury to find that Unit's

proffered legitimate, non-discriminatory reason was merely pretext.[11]

Finally, the Court finds the EEOC's statistical evidence probative of pretext.  As a general

rule, a company's overall employment statistics will have little direct bearing on the specific

intentions of an employer in hiring or terminating a particular individual.  *Turner v. Pub. Serv. Co.*

---

[11]  Unit contends the EEOC does not argue that the Claimants were *more* qualified than
the males hired, only that they were similarly qualified.  Unit cites *Johnson v. Weld County,
Colorado*, 594 F.3d 1202, 1211 (10th Cir. 2010), in which the Tenth Circuit held that a "a
plaintiff must come forward with facts showing an overwhelming disparity in qualifications" to
show pretext where an employer claims it hired someone based on superior qualifications.
 With regard to weighing the qualifications of candidates, the Court must tread carefully.
*See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (per curiam) (noting
that courts "must proceed with caution when considering the relative merits of individual
employees" or candidates for employment).  Although minor differences between the
qualifications of the plaintiff and a successful applicant are insufficient to show pretext alone,
*Hamilton v. Oklahoma City University*, 563 F. App'x 597, 603 (10th Cir. 2014), the cases relied
on by Unit address situations where a lack of qualifications was the only evidence of pretext
presented or, at least, the primary evidence of pretext.  As discussed below, the EEOC has
presented additional evidence of pretext in this case.

*of Colo.*, 563 F.3d 1136, 1147 (10th Cir. 2009).  In order for statistical evidence to be probative of

disparate treatment, it generally must "focus on eliminating nondiscriminatory explanations for the

disparate treatment by showing disparate treatment between comparable individuals." *Id.* (internal

quotation omitted) ("Without evidence regarding the number of male and female applicants,

interviewees, and the like, the employment statistic is nearly meaningless.").

One exception to this general rule, although employed infrequently, is when there exists

"gross statistical disparities" or an "inexorable zero." *See Carney v. City & Cnty. of Denver*, 534

F.3d 1269, 1275 (10th Cir. 2008) (suggesting that "gross statistical disparities" may show pretext,

but refusing to determine whether the statistical disparities at issue were gross because there were

problems with the plaintiff's statistical evidence); *Marion v. Slaughter Co.*, No. 98–6286, 1999 WL

1267015, at * 6 (10th Cir. Dec. 29, 1999) ("Under certain circumstances an inference of

discrimination may sometimes be drawn from statistical evidence that no member of a protected

group has ever occupied a particular job or position."); *Int'l Bhd. of Teamsters v. United States*, 431

U.S. 324, 342 n. 23 (1977) (inference of discrimination came from "inexorable zero," i.e., the

complete absence of minority drivers).

In this case, the EEOC's statistical evidence suggests a gross disparity in hiring practices that

could ultimately support findings of individual discrimination with respect to each Claimant.  The

EEOC has presented evidence that (1) females applied for floor-hand positions, (2) neither the job

description or qualifications exclude females from floor-hand positions, and (3) of the 1,600 floor

hands hired during a two-year period across three different divisions, zero were female.  Unit has

not disputed this evidence or challenged this assertion.  When the numbers are this stark and the job

description itself does not render females inherently less qualified, the statistics can be probative of

individual discrimination.[12]  In combination with the other evidence presented, the Court finds that

the statistics contribute to the EEOC's ability to survive summary judgment and reach a jury on the

question of whether disparate treatment occurred.

**IV.     Conclusion**

Defendant's Motion for Partial Summary Judgment (Doc. 154) is DENIED.  Plaintiff's

Motion to Strike Paragraphs from Unit Drilling's Affidavits (Doc. 201) is DENIED as moot.

Defendant's Motion in Limine to Exclude Testimony that Claimant Sydnea Hanses Applied for a

Rig Hand Position (Doc. 234) is DENIED.  Defendant's Motion in Limine to Exclude Evidence

Pertaining to Kim Wilson's Second Application for Employment (Doc. 240) is GRANTED.

**SO ORDERED** this 24th day of March, 2015.

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

[12]  The Court has no intention to provide an "inexorable zero" jury instruction but will instead simply permit the evidence to be argued as support for EEOC's case. *Marion*, 1999 WL 1267015, at * 7 (affirming refusal to provide an "inexorable zero" jury instruction where district court permitted counsel to "argue the statistics and inferences" therefrom claimed by the plaintiff).